**FILED**
**United States Court of Appeals**
**Tenth Circuit**

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

**July 28, 2026**

**Christopher M. Wolpert**
**Clerk of Court**

_____

BRIAN GARRETT,

    Plaintiff - Appellant,

v.

DENVER C.A.R.E.S., a behavioral health
facility operated by Denver Health Medical
Center/Denver Health and Hospital
Authority; CHRISTIAN C. THURSTONE,
M.D.; DANIEL PADDOCK; SAMUEL
AZIAMART; GOUN SKEEN, RN;
ALICIA VELASQUEZ; GINNA
MICHALK; JAHARRI ASTEN, CAC;
MATHEW BUSTOS, CAC,

    Defendants - Appellees.

------------------------------

CATO INSTITUTE,

    Amicus Curiae.

No. 24-1363
(D.C. No. 1:23-CV-01033-DDD-JPO)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **MATHESON**, **EID**, and **CARSON**, Circuit Judges.
_____

---

[*] This order and judgment is not binding precedent, except under the doctrines
of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for
its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

A concerned neighbor called authorities to report what appeared to be an altercation occurring on Plaintiff Brian Garrett's front lawn. Officers responded and placed Plaintiff in the back of a patrol car. Ultimately, officers caused him to be transported to Denver CARES—a behavioral health facility located in Denver, Colorado. While there, Plaintiff registered a 0.196 blood alcohol level. Denver CARES held Plaintiff for about eleven hours so that he could sober up before discharging him.

Plaintiff sued Denver CARES and several of its staff members for allegedly violating his Fourth Amendment right to be free from unreasonable seizures. The district court determined that Plaintiff had not plausibly alleged a constitutional violation and dismissed his case. Our jurisdiction arises under 28 U.S.C. § 1291. We affirm.

I.

The Denver Health and Hospital Authority ("DHHA") is a political subdivision of the State of Colorado. DHHA operates Defendant Denver Community Addiction Rehabilitation and Evaluation Services ("Denver CARES"). Denver CARES provides short-term and residential treatment for drug and alcohol users. DHHA also operates the Emergency Service Patrol ("ESP"), which responds to police and community requests to transport intoxicated individuals to Denver CARES.

After attending a Colorado Rockies game, Plaintiff Brian Garrett joined his roommate and some friends for drinks on his front lawn. At some point, Plaintiff and

2

his roommate began to argue.  The argument led to a physical altercation.  A neighbor saw the brawl and called the Denver Police Department ("DPD").  Officers handcuffed Plaintiff and placed him in the back of a police car.  Officers contacted ESP.  When ESP arrived, personnel moved Plaintiff from the police car to the ESP van.  ESP transported Plaintiff to Denver CARES.  ESP personnel noted that they "received [Plaintiff] from [DPD] officers" and that Plaintiff "was very verbally aggressive and cursing and threatening lawsuit," "ha[d] a strong odor of alcohol and ha[d] slurred speech," and "walked to the [ESP] van with a staggered gait . . . ."  At no point did officers or ESP personnel administer a breathalyzer or a field sobriety test.

Upon Plaintiff's arrival, Denver CARES initiated its standard admission process.  A Denver CARES technician administered a breathalyzer to determine Plaintiff's blood alcohol level ("BAL").  The breathalyzer established Plaintiff's BAL upon arrival at 0.196.[1]  Denver CARES technicians used this number to determine Plaintiff's estimated sober time ("EST")—the estimated time that his BAL would be 0.000—at around ten hours later.  Technicians also took Plaintiff's vitals and other relevant medical history.  Despite Plaintiff asking to leave and refusing to

---

[1] BAL (or BAC) refers to the percentage of alcohol in a person's bloodstream and is the measurement used to determine legal impairment.  For reference, under Colorado law, a person commits Driving Under the Influence when his BAL is 0.08 or more at the time of driving or within two hours of driving.  Colo. Rev. Stat. Ann. § 42-4-1301(2)(a) (West).

sign a consent for treatment, Denver CARES staff escorted him to the male dormitory to sober up.

Plaintiff asked staff multiple times to allow him to leave, telling them that he was not a danger to himself or anyone else. Staff told him that the doors were locked, that he would need to wait to see a counselor before he could leave, and that he could not see a counselor until closer to his EST. At some point, a staff member informed a counselor about Plaintiff's requests to leave. A counselor noted in Plaintiff's chart that Plaintiff "repeatedly interrupted staff" and "request[ed] to leave" and that staff "de-escalated" and "encouraged [Plaintiff] to stay."

Approximately thirty minutes after Plaintiff's EST, Denver CARES discharged him. Plaintiff refused to sign any forms or meet with a counselor.

Plaintiff filed this lawsuit, asserting Fourth Amendment and state law tort claims against Denver CARES and several of its employees. Defendants moved to dismiss Plaintiff's claims under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Defendants argued that Plaintiff failed to sufficiently allege municipal liability against Denver CARES because no constitutional violation occurred. For the same reason, Defendants argued that the law entitled the individual defendants to qualified immunity. Specifically, Defendants argued that they did not violate Plaintiff's Fourth Amendment rights because officers had probable cause to detain Plaintiff, and ESP and Denver CARES staff reasonably relied on that determination. In a careful and well-reasoned order, the district court agreed that Plaintiff failed to allege that Defendants violated his Fourth Amendment rights and dismissed his

4

complaint for failing to state a claim upon which relief may be granted.[2] Plaintiff appeals.

## II.

We review de novo a dismissal for failure to state a claim under Rule 12(b)(6). SEC v. Shields, 744 F.3d 633, 640 (10th Cir. 2014) (quoting U.S. ex rel. Lemmon v. Envirocare of Utah, Inc., 614 F.3d 1163, 1167 (10th Cir. 2010)). "We accept as true all well-pleaded factual allegations in the complaint and view them in the light most favorable to the [plaintiff]." Id. (quoting Burnett v. Mortg. Elec. Registration Sys., Inc., 706 F.3d 1231, 1235 (10th Cir. 2013)). We must assess whether the specific factual allegations in Plaintiff's complaint alone plausibly support a legal claim for relief. Pace v. Swerdlow, 519 F.3d 1067, 1073 (10th Cir. 2008) (citing Alvarado v. KOB-TV, L.L.C., 493 F.3d 1210, 1215 n.2 (10th Cir. 2007)).

The individual defendants' qualified immunity defense and Plaintiff's municipal liability claim against Denver CARES both turn on the existence of an underlying constitutional violation. See A.M. v. Holmes, 830 F.3d 1123, 1134 (10th Cir. 2016) ("When a defendant asserts the defense of qualified immunity, 'the onus is on the plaintiff to demonstrate "(1) that the official violated a statutory or constitutional right . . . ."'" (quoting Quinn v. Young, 780 F.3d 998, 1004 (10th Cir. 2015))); Jiron v. City of Lakewood, 392 F.3d 410, 419 (10th Cir. 2004) (stating that a

---

[2] Because the district court dismissed Plaintiff's federal claims, it also declined to exercise jurisdiction over Plaintiff's state law claims and dismissed them without prejudice.

5

plaintiff must show "that a municipal employee committed a constitutional violation" to succeed on a municipal liability claim (citing <u>Myers v. Okla. Cnty. Bd. of Cnty. Comm'rs</u>, 151 F.3d 1313, 1316 (10th Cir. 1998))).  Thus, to proceed with his Fourth Amendment claims, Plaintiff must plausibly plead that a municipal employee violated his constitutional rights.

Plaintiff argues that the district court erred in determining that he failed to allege that Defendants violated his constitutional rights.  First, he argues that Defendants did not have probable cause at any point to detain him.  Second, Plaintiff argues that Denver CARES unreasonably detained him for eleven hours.  He contends that, even if probable cause supported his initial seizure, Denver CARES's assessments of him did not indicate that he was intoxicated and clearly dangerous and, thus, Denver CARES should have released him.  We disagree.

A.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures."  U.S. Const. amend. IV.  "The ultimate touchstone of the Fourth Amendment is reasonableness."  <u>Soza v. Demsich</u>, 13 F.4th 1094, 1107 (10th Cir. 2021) (citing <u>United States v. Merritt</u>, 695 F.2d 1263, 1272 (10th Cir. 1982)).  A warrantless seizure is reasonable when it is based on probable cause.  <u>Anaya v. Crossroads Managed Care Sys., Inc.</u>, 195 F.3d 584, 590 (10th Cir. 1999) (quoting <u>Pino v. Higgs</u>, 75 F.3d 1461, 1467 (10th Cir. 1996)).  This is true even outside of a criminal arrest, such as seizures for mental

6

health evaluations or detoxification.[3] Id. at 591–92. "[T]o justify seizure for intoxication by alcohol, an officer must have probable cause to believe an intoxicated person is a danger to himself or others." Id. at 591. "The determination of probable cause 'is based on the totality of the circumstances, and requires reasonably trustworthy information that would lead a reasonable officer to believe,' in this context, that the individual posed a danger to himself or others." United States v. Gilmore, 776 F.3d 765, 769 (10th Cir. 2015) (quoting Cortez v. McCauley, 478 F.3d 1108, 1116 (10th Cir. 2007)).

Plaintiff does not challenge DPD officers' probable cause to seize him initially. Instead, Plaintiff argues that ESP and Denver CARES did not independently have probable cause to seize him for detoxification. He insists we need not decide whether the law requires Defendants to reassess probable cause. Instead, he argues Defendants did, in fact, make a probable cause assessment and are subject to liability because the totality of the circumstances did not support their probable cause finding.

Plaintiff alleges that when ESP arrived and received Plaintiff from DPD, Plaintiff was in the back of a police car in handcuffs. From these facts, ESP could

---

[3] The ability of the state to seize individuals for these purposes stems from the state's inherent police power to "maintain the health, safety and welfare of the public." Anaya, 195 F.3d at 591 (citing Keystone Bituminous Coal Assoc. v. DeBenedictis, 480 U.S. 470, 479 (1987)). Such interference and "encroachment upon private interests" demands that the seizure is in the public interest and that "the means are reasonably necessary for the accomplishment of the purpose, and not unduly oppressive upon individuals." Id. (quoting Goldblatt v. Hempstead, 369 U.S. 590, 594–95 (1962)).

reasonably infer that officers believed Plaintiff was intoxicated and a danger to himself or others. And because ESP could rely on DPD's assessment, these facts weigh in favor of Denver CARES's probable cause conclusion. After all, we have held that other officers and medical personnel can rely on the seizing officer's probable cause assessment.[4] See Baptiste v. J.C. Penney, Co., 147 F.3d 1252, 1260 (10th Cir. 1998) ("An officer . . . is not required to reevaluate the arresting officer's probable cause determination in order to protect herself from personal liability."); Marshall v. Columbia Lea Reg'l Hosp., 345 F.3d 1157, 1179–1181 (10th Cir. 2003) (holding that a nurse could not be sued for performing a blood test on a protesting patient because it was objectively reasonable for her to rely on the officer's probable cause determination). Additional facts support the presence of probable cause as well. Plaintiff "was verbally aggressive and cursing and threatening lawsuit," had "a strong odor of alcohol and [] slurred speech," and "walked to the [ESP] van with staggered gait . . . ." When Plaintiff arrived at Denver CARES, a breathalyzer established his BAL at 0.196—more than twice the legal limit for operating a motor vehicle. Plaintiff "repeatedly interrupted staff," who had to "de-escalate[]" the situation. These facts confirm that the totality of the circumstances available to ESP and Denver CARES supported probable cause to detain Plaintiff for alcohol intoxication.

---

[4] Officers can even rely on "what proves to be the flawed conclusions of a fellow police officer" if that reliance is "objectively reasonable." Baptiste, 147 F.3d at 1260 (quoting Rogers v. Powell, 120 F.3d 446, 455 (3d Cir. 1997)).

Perhaps recognizing that the facts generally support probable cause, Plaintiff argues that our analysis must be more nuanced because the original seizure occurred on his front lawn and not in a public place.  Plaintiff argues that the Supreme Court's Caniglia v. Strom, 593 U.S. 194 (2021), decision counsels that officers have little leeway to intrude on private property for "community caretaking" tasks, such as detaining an intoxicated individual who is a danger to himself or others.  To be sure, Caniglia rejected a general "community caretaking" exception to the Fourth Amendment's prohibition against warrantless entry onto private property.  Id. at 199.  But Plaintiff's strategic pleading choices foreclose this theory.  Plaintiff does not challenge DPD's decision to seize him from his front yard—he specifically disavows such a challenge.  Instead, his challenge begins with the transfer of custody to ESP, which occurred not on his front lawn but with his transfer from a police vehicle.  Accordingly, his Caniglia-based argument is without merit.

B.

In the alternative, Plaintiff argues that, even if Defendants had probable cause for the initial seizure, that probable cause dissipated and Denver CARES should have released him.

In the criminal arrest context, a person must be released if new information comes to light that would dissipate probable cause.  Hinkle v. Beckham Cnty. Bd. of Cnty. Comm'rs, 962 F.3d 1204, 1221 (10th Cir. 2020).  But an arresting officer is "not required to reassess his probable cause conclusion at every turn," and an arrestee's "bare proclamations of innocence" do not dissipate probable cause.  Id.

9

(quoting Thompson v. Olson, 798 F.2d 552, 556 (1st Cir. 1986) and citing Romero v. Fay, 45 F.3d 1472, 1480 (10th Cir. 1995)). "[A]rresting officers must release a suspect only if the police discover that 'the suspicion (probable cause) which forms the basis for the privilege to arrest is unfounded.'" Id. (quoting Thompson, 798 F.2d at 556). In other words, probable cause dissipates when police receive new information that "nullifies information critical to the earlier probable cause determination . . . ." United States v. Dalton, 918 F.3d 1117, 1128 (10th Cir. 2019) (citing Wayne Lafave, Search and Seizure § 4.7(a), at 822 (5th ed. 2012)).

Applying this logic here, neither ESP nor Denver CARES staff received new information that rendered "information critical to the earlier probable cause determination" unfounded. Indeed, any new information staff learned supported probable cause, especially his 0.196 BAL. If probable cause dissipated at any point, it would have been at or around his EST, and Denver CARES released Plaintiff within thirty minutes of that time. At most, Plaintiff made protests and "bare proclamations" to Denver CARES, and those acts do not suffice to dissipate probable cause. See Hinkle, 962 F.3d at 1221.

AFFIRMED.

Entered for the Court

Joel M. Carson III
Circuit Judge

10

24-1363, Garrett v. Denver C.A.R.E.S., et al.

 **EID**, J., concurring in the judgment.

 I join the majority in dismissing Garrett's suit. I do so, however, on the ground that Denver CARES personnel are entitled to qualified immunity. To avoid the application of qualified immunity, Garrett must demonstrate that it was clearly established at the time of his detention that their conduct in failing to re-breathalyze him violated his constitutional rights. *See Palacios v. Fortuna*, 61 F.4th 1248, 1256 (10th Cir. 2023). To show clearly established law, we do not require a plaintiff to identify "a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). Crucially, Garrett fails to identify Tenth Circuit or Supreme Court precedent in which a court held facility personnel liable for continuing to detain an intoxicated person without re-breathalyzing him. Accordingly, I join the majority in dismissing Garrett's complaint, but I do so on different grounds.